In the Matter of IDA ROTKOWITZ, a Neglected Child, Ten Years of Age.

Domestic Relations Court of City of New York, Children's Court, Kings County, February 28, 1941.

PANKEN, J. Section 85 of the Domestic Relations Court Act of the City of New York, in part, reads: " Whenever a child within the jurisdiction of the court and under the provisions of this act appears to the court to be in need of medical or surgical care a suitable order may be made for the treatment of such child in its home, in a hospital or other suitable institution."

The little girl is in need of a surgical operation and post-operative medical care. It is inadvisable to perform the operation and administer the post-operative care which the child requires in her own home.

The question presented is, Has this court the power to order an operation for this child in face of the opposition of her father?

Children properly should be cared for and looked after by their parents. A child becomes the ward of the State and is to have protection of its life, limb and its person and property where that is withheld by its parents because of neglect or poverty, or denied because of ignorance. The State delegates that power to instrumentalities created for that purpose and to serve that end. The courts are the agencies which have been clothed with the power to protect the person, life and limb and property of our child population.

It is doubtful that under the common law the courts had the powers now conferred upon them, to order treatment for children to the extent even of a surgical operation or to require of parents to do that which is promotive of the interests and is protective of the rights of a child. We have emerged from that period in the history of man, and left behind its prejudices, biases and limitations of a community interest in the child population. The law is a growth. It could not serve the purposes of man and his needs were it static, inflexible and rigid. Like life, the law constantly undergoes change — change which is imposed by life upon law. Law is instituted amongst men for the protection of the individual against the community, as well as for the protection of the community against the individual; and to protect children against parents where there is neglect.

Most parents are competent, and are interested in the welfare of their children; they will do each and everything necessary in any given circumstances to preserve the life of a child, protect its health, its limbs and conserve its property.

There are parents, however, who because of ignorance or prejudice or neglect, and sometimes even viciousness, are either incapable or unwilling to do the things necessary for the protection of their own offspring. There are parents who will by act do that which is harmful to the child and sometimes will fail to do that which is necessary to permit a child to be prepared to lead a normal life in the community.

Under the act establishing this court, it has the power, where children have been neglected by parents or others, to place them in foster homes or institutions to afford these children proper surroundings, helpful atmosphere, training and a life-giving environment. That is done with or without consent of parents.

This court has the power to require that children be examined psychiatrically, tested psychologically and physically examined so that the court may be aided in determining what is best for the child.

In *Matter of Vasko* (238 App. Div. 128) the court sustained an order made by a judge of the Children's Court in face of strenuous opposition to the order by its parents. That order was made to save the life of the child because it had become endangered by reason of some disease to one of its eyes. The order permitted the removal of the eye.

Significant language was used by Mr. Justice HAGARTY in the *Vasko* case. He said: "Medicine and surgery are not exact sciences, and the result of an operation may not be foretold with accuracy. Decision must be made, and the parents persist in their refusal to consent. Children come into the world helpless, subject to all the ills to which flesh is heir. They are entitled to the benefit of all laws made for their protection — whether affecting their property, their personal rights or their persons — by the Legislature, the sovereign power of the State."

I am entirely in accord with these views. It breathes the purpose of the law and it reflects in words the intent of the Legislature when it enacted various laws protective of the personal rights and life and limb of children.

The law is zealous in the protection of the civil rights of all persons. Children are persons. The law has a "special regard," as it has been said in *People ex rel. Deordio* v. *Palmer* (230 App. Div. 397), "for the moral care, training and guidance of children."

The physical well being of children is the basis for the moral care, proper training and guidance. A child who is deprived of the use of its limb which becomes progressively worse cannot have a sense of security. It feels itself different from others. It suffers from a sense of rejection. It cannot take its proper place in the group in which it lives. To the extent that medical science can correct the deformity or the limitation of the use of a limb, that service should be accorded.

When the Legislature clothed this court with the power to make an order for surgical care, it cannot be said that an order is to be made only in case where the parents consented to such order. I must conclude that it was the intention of the Legislature to give power to the justices of this court to order an operation not only in an instance where the life of the child is to be saved but also in instances where the health, the limb, the person or the future of the child is at stake.

The report submitted by the New York Orthopedic Hospital specifically states that an operation is necessary to correct the deformity of the right lower extremity from which the child is suffering and which is becoming aggravated. The deformity was induced by poliomyelitis. This operation, the doctor testified,

is not a serious one; it is absolutely necessary to stabilize the foot and prevent aggravation and extension of the deformity.

This surgery was advised four years ago when the child was first examined. It appeared to be necessary then. The condition has become worse. The operation was not performed because of the opposition of the father.

Dr. Frank J. Tarsney, a duly licensed physician and a specialist in orthopedics, testified that he had examined this child in November of 1940, and at that time found that an operation was necessary to prevent further deformity and immobility and for correction of the condition existing. I asked him to re-examine the child on the day the hearing was had before me, to wit, the 28th of February, 1941. Less than four months elapsed since his first examination. His testimony is that the condition has become aggravated and the deformity is more pronounced. He testified that the condition will become worse as time goes by unless operative correction is had now. Two other doctors have certified to the need of the operation — Dr. Chancellor Whiting, a physician who has extensive experience, and Dr. Alfred Hallock, a noted orthopedic surgeon.

The father of the child testified and said, in so far as it was possible for him to make himself articulate, that he was opposed to the operation. He gave no reason why he is opposed. The mother testified that she is very anxious that the child be operated on. The situation is that one parent is in favor of the operation; the other opposed. The one who has the intelligence to be concerned about the future of the child wants the operation; the other who is either unconcerned or has no capacity to be concerned, is opposed to it. That creates a situation almost parallel to the two women, each of whom claimed to be the mother of a child and when King Solomon said he would give each half of the child, the true mother was ready to give the whole child to the one who was not the mother.

Upon all of the testimony submitted, there is no doubt that a successful operation will correct the condition in so far as correction can be had of the child's foot. That would effect a stabilization of the foot. Presently, the foot is deformed and hangs, as I have observed it. The hospital authorities refuse to perform the operation without the consent of both parents, unless ordered by the court.

The question before this court is whether an order should be made for such operation. It is my opinion that the best interests of the child now and for the future require an order to be made

regardless of the opposition of the father. Such an order would be permissive in face of opposition of both parents.

The court acquired jurisdiction of the child on a petition of the mother charging neglect. The child was found neglected — neglected by the father.

Order accordingly.