In the Matter of MARTIN SEIFERTH, JR., an Infant, et al., Respondents. WILLIAM E. MOSHER, as Deputy Commissioner of Health for Erie County Health Department, Appellant.

Fourth Department, January 12, 1955.

*Elmer R. Weil, County Attorney (George M. Nelson* and *Wortley B. Paul* of counsel), for appellant.

*William G. Conable* and *Whitney W. Gilbert* for respondents.

VAUGHAN, J. This is an appeal by the petitioner, a deputy commissioner of the Erie County Health Department, from an order of the Children's Court of Erie County denying the prayer of the petition. The petition sought transfer of custody of a twelve-year-old boy from his parents to the Commissioner of Social Welfare " for the purpose of consenting to the performance of such medical, surgical and dental services as may be necessary ". The summons is directed to Martin Seiferth, Jr., and his parents. The boy is afflicted with a congenital harelip and cleft palate which seriously detract from his appearance and his chances for a useful, productive life. His father for unsubstantial reasons refuses to consent to medical treatment to correct this condition, and the court below has declined to order an operation. That disposition of the case, we believe, represents an abuse of discretion.

The child has a continuous cleft running from the upper lip and teeth through the roof of the mouth. This produces a marked speech defect, and the teeth are in a state of disrepair and decay. The lip can be repaired. Later, surgery could be used to close as much of the palate as possible, with benefit to the boy's speech. The risk in such an operation is negligible. It is too late, however, to use surgery on the front part of the palate, which would require dental appliances. According to

the medical testimony, " a very worthwhile improvement could be made ". This treatment should be given as soon as possible because the boy will soon enter adolescence and because results become less favorable as the patient advances in age.

The child's mother did not testify, and her views on the matter are unknown. The father stated that he was not basically opposed to an operation but thought the time was not right. He would consent if the child " in a few years " should decide in favor of treatment. He preferred to rely on " forces in the universe ", which would enable Martin to cure himself of his own accord. A surgeon's work would so interfere with the body that " in order to recover the individual would have to remedy the surgeon's distortion first and then go back to the primary task of healing the body ". This is a philosophy or theory of healing, not a religion of any kind. A small group of believers, without a leader or literature, meet and exercise the forces. Asked if it would not contribute to the boy's happiness if the defect were corrected, his father replied, " It would make a great deal of difference if it were done now. The child, of course, is exposed to criticism from many parts." However, he thought Martin had overcome ridicule by pleasantness and enjoyed a happy home life. He further noted that, having been taught that physicians are unnecessary, Martin feared them.

The court below placed the responsibility of decision upon the child himself. Physicians explained the operations to him. He was shown photographs and listened to voice records. He stated that, without interference from his father, he had decided to try for some time longer to close the cleft palate and harelip through " natural forces ". The court below, therefore, denied the petition but stated that " had this proceeding been instituted before this child acquired convictions of his own, on the same evidence as presented in the present case, the order for medical surgery would have been granted without hesitation ". The court refused to find that the surgery could be performed " without any dangerous mental reaction to the infant ", but concluded that the parents refused, when able to do so, to provide necessary medical and dental services and speech training within the meaning of paragraph (e) of subdivision 4 of section 2 of the Children's Court Act.

Paragraphs (e) and (g) of subdivision 1 of section 6 of the Children's Court Act confer upon the Children's Court jurisdiction of " neglected " and " physically handicapped " children. A neglected child is one under sixteen years of age whose

parent "neglects or refuses, when able to do so, to provide necessary medical, surgical, institutional or hospital care for such child " (§ 2, subd. 4, par. [e]). A physically handicapped child is one under twenty-one years of age " who, by reason of a physical defect or infirmity, whether congenital or acquired by accident, injury or disease, is or may be expected to be totally or partially incapacitated for education or for remunerative occupation, as provided in the education law, or is or may be expected to be handicapped, as provided in the public health law." (Children's Court Act, § 2, subd. [7]; Education Law, § 4401; Public Health Law, § 2581.) The one definition stresses the cause (parental neglect), the other stresses the result (incapacitation). Obviously, a physically handicapped child may also be neglected. Section 24 of the Children's Court Act applies to both classes: " Whenever a child within the jurisdiction of the court and under the provisions of this act appears to the court to be in need of medical or surgical care or therapeutic treatment, hospital care, necessary appliances and devices or of special educational training * * * a suitable order may be made for the treatment or education or both of such child in its home, a hospital, or other suitable institution ". This section contemplates medical treatment over the opposition of the parents. (*Matter of Vasko,* 238 App. Div. 128.) If they consented, no order would be necessary. The statute is not simply a means by which financially incapable parents may procure county aid, for they may be ordered to pay part or all of the expenses. Furthermore, there need be no " emergency ". (*Matter of Rotkowitz,* 175 Misc. 948.) This section is expressly discretionary with the court, and if it applied only where life is in danger, it is difficult to see where there would be much room for discretion, unless the operation itself were dangerous to life. The statute contemplates orders for " necessary appliances and devices " and for " special educational training ". These words do not suggest peril to life or limb. Instead they create a broad power to be exercised for the benefit of children otherwise facing a lifetime of physical or educational handicap or incapacity.

A court of equity in determining questions of custody " acts as *parens patriæ* to do what is best for the interest of the child ". (*Finlay* v. *Finlay,* 240 N. Y. 429, 433; 4 Pomeroy Equity Jurisprudence [5th ed.], § 1307.) The State has an enormous interest in the physical and mental health of its inhabitants. (*Jacobson* v. *Massachusetts,* 197 U. S. 11; *Buck* v. *Bell,* 274 U. S. 200.)

It is the public policy of this State " to provide medical services for the rehabilitation of physically handicapped children ". (Public Health Law, § 2580.) We believe that the infant respondent is both a neglected child and a physically handicapped child. He is neglected because his father refuses to furnish him with medical care which is needed. He is physically handicapped because, equally with the deaf and the crippled, he is partially incapacitated for education and remunerative occupation. It is immaterial that his physical life is not in danger. The statute contains no such strict requirement. What is in danger is his chance for a normal, useful life. It is a serious error to permit this twelve-year-old boy, a victim of his father's delusions, to make such a choice for himself. His consent is legally immaterial because, as a result of youth and misguidance, he does not appreciate the nature of the operation or the consequences of the alternative (see Restatement, Torts, § 59). By the time he is old enough to realize what is best, according to the medical testimony it may be too late. So far as concerns the lower court's fear of the psychological effect of a forced operation, that effect would seem to be small in comparison with the psychological effect of permitting the child to enter adolescence with such a deformity and handicap.

We know that the integrity of the family is involved. The father's decision is entitled to the greatest respect. We would accept it when we would reject a jury verdict or the determination of an administrative agency. But it must have some slight basis in fact or reason, when seriously opposed to the best interests of the child. The trust which the law imposes on parents is not discharged when through delusion they arbitrarily deny the child the aid of needed medical care which can be rendered without substantial risk and if necessary without cost.

The order appealed from should be reversed and the relief requested in the petition granted.

WHEELER, J. (dissenting). Under the circumstances of this case I find it difficult to subscribe to the view that this twelve-year-old boy of normal intelligence should be compelled to submit to surgery, which both the boy and his father seriously oppose.

Unquestionably, the boy is handicapped by an extremely serious facial disfigurement and a marked speech defect, due to a congenital cleft palate and harelip, which in all probability could be in part corrected by surgical treatment. The unfortunate opposition to surgery by the boy and his father appears

to be honest and sincere, although that of the father apparently stems from an unsubstantial and fanatical belief in the existence of " forces of nature ".

Under these circumstances the Judge of the Children's Court was confronted with a most difficult problem, calling for the exercise of sound judgment and discretion. The record indicates that he has considered the case with great care, and both in and out of court, has endeavored, but without success, to persuade the boy and his parents to voluntarily consent to the suggested surgery. The trial court reached the conclusion that more harm than good might result from arbitrarily forcing the boy to submit to surgery. There was also a refusal to find that surgery under such circumstances could be performed without dangerous mental reaction.

In the light of these findings and for the further reason that the court was not faced with an emergency in which the health or life of the child was at stake (*Matter of Vasko,* 238 App. Div. 128), I feel that there was no improvident exercise of discretion by the Judge of the Children's Court in declining " at this time " to grant the extraordinary order sought in this proceeding.

I therefore dissent and vote to affirm.

All concur, except WHEELER and VAN DUSER, JJ., who dissent and vote for affirmance in an opinion by WHEELER, J., in which VAN DUSER, J., concurs. Present — McCURN, P. J., VAUGHAN, PIPER, WHEELER and VAN DUSER, JJ.

Order reversed on the facts and as a matter of discretion, and petition granted, without costs of this appeal to any party. New findings of fact made. [See *post,* p. 999.]