Howard A. Zeller, J.
This is a motion pursuant to section 1170 of the Civil Practice Act by Barbara Burns Blank for an order modifying a judgment of divorce granted by the State Supreme Court in Tompkins County, New York, on July 1, 1955 so as to award to her the sole custody of Jane Mary Burns, now aged 10 and John Joseph Burns, now aged 8, issue of movant’s prior marriage to Harold S. Burns. A notice of appearance was served by her attorney on behalf of the then Mrs. Burns as defendant in the 1955 divorce proceedings, but she thereafter defaulted in answering and appearing. The judgment of divorce awarded custody of the children to Harold S. Burns without making provisions for visitation by the then Mrs. Burns. A full hearing on this motion was had on April 15, 1960. Extensive testimony was heard and affidavits and other proof were presented in the course of the hearing or submitted with the moving papers. Following the formal hearing the court interviewed both children separately in chambers. Decision was reserved *131 and counsel given time to file memoranda which are now before the court.
Initially, Mrs. Blank seeks to negate the custody award in the 1955 judgment of divorce through a collateral attack on the decree based on an alleged irregularity in verification of the complaint and an alleged absence of any inquest or findings on the question of defendant’s fitness for custody as a necessary basis for originally determining custody. Apart from implications concerning the validity of the entire decree itself, this argument would render at least the issue of custody an original-issue before this court. This is not thought to be the case.
In the first place, defendant filed a notice of appearance in the 1955 divorce action through her counsel. The default in answering or appearing on trial was deliberate and the decision made with defendant’s counsel in possession of a copy of the complaint setting forth Mr. Burns ’ claim of custody. Beyond the bald allegations of the argument, no proof was submitted on the points advanced. The presumptions of regularity as well as the principles of waiver and estoppel must defeat this argument of Mrs. Blank’s. We may thus proceed to the merits of this motion to modify the custody provisions of the 1955 judgment of divorce, keeping in mind that the sole and primary consideration of the court is the best interests, health and welfare of the children themselves. (See Matter of Bachman v. Mejias, 1 N Y 2d 575.)
Since March 20, 1955 the physical care and custody of the Burns children has been continually with Rudolf Clark and Greta Clark, who is Mr. Burns ’ sister, except for a brief period in 1956 when the children resided with Mr. Burns and his second wife whose illness terminated the arrangement. Since 1955, Burns himself apparently has resided with the Clarks periodically as his circumstances required. The Clarks, who are themselves childless, reside in New York City in a well-furnished apartment at 150 West 86th Street, which is two blocks from Central Park and several blocks from Riverside Drive. Mr. Clark is an officer of a wholesale firm of stone and jewel importers and avocationally is a free-lance writer. Both Mr. and Mrs. Clark are in the 40-year-old age bracket, appear to be culturally and civically active individuals beyond the norm, and are intensely devoted to the Burns children. Mr. Clark’s income varies from $8,000 to $14,000 per year.
Burns remarried in December, 1955 and intermittently thereafter has resided at Irvington, New York, about 25 miles outside New York City. Mr. Burns is professionally associated with a mid-town New York firm of architects, and testifies to *132 an income in excess of $10,000 per year. However, the full support of the Burns children is provided by the Clarks who report them as dependents for tax purposes. Burns testified that he does purchase the children’s clothing and has an educational savings program of an undetermined amount for them.
Without particular pattern, Mr. Burns visits or is in telephone contact with his children at the Clark home during the week, and he and the children occasionally attend church school and services together Sundays in company with the Clarks. The children attend public school and receive regular medical and dental care. From all facets of their present lives emerges the picture of two personable, intelligent, well-adjusted, and physically well-eared for children.
Barbara T. Burns Blank married Harold S. Burns at Niagara Falls, New York, on June 11, 1946 when she was 18 years of age and then a Canadian citizen. Burns himself had completed what may have been a fairly lengthy tour of military service, and was somewhat older. In September, 1947, the Burns moved to Ithaca, New York, where Burns enrolled in the College of Engineering. After two years in engineering school Burns apparently transferred to an architectural course from which he subsquently graduated in February, 1954. Jane Mary Burns was born in June, 1950, and John Joseph was born in 1952. Barbara T. Burns was employed for much of the period from late 1947 to the Spring of 1950 prior to Jane’s birth. Part of the family and school expenses were met from payments under the Gr. I. Bill. There was some financial assistance from both families and Burns also had some part-time employment as well as scholarship assistance in the later years of his course. In this setting, and apparently due in part to both financial and personality factors, the Burns ’ marital relations did not thrive. The situation culminated in Mrs. Burns ’ extra-marital involvement with Samuel H. Blank, also then a student at Cornell and to whom she is presently married, and finally with Mrs. Burns’ departure with the children in June, 1954 from the Burns’ home Avhich by then had been relocated in Buffalo, New York. Beconciliatory efforts failed, and from the Fall of 1954 Mrs. Burns Blank and the Burns children lived as a family unit first in Washington, D. C., and then in Ithaca, New York, until March 19, 1955, when Burns procured the physical custody of the two children. The children thereupon were placed under the Clarks’ care in New York City. Out of the relations between Blank and Mrs. Burns a child Dorothy Blank was born on May 31, 1955. In the meantime Burns had initiated the divorce proceedings *133 which ended in the judgment of divorce dated July 1, 1955. Mrs. Burns and Blank were married in Connecticut on October 22, 1955. In November, 1959 the Blanks became the parents of twin boys.
Since 1956 the Blanks have resided in Columbus, Ohio. Blank is employed as an engineer in an engine division of a major electrical manufacturing corporation. The family rent a seven-room bungalow in a suburban section of the city. The home gives the impression of being well kept and nicely furnished. From everything before the court it appears that the Blanks have achieved a happy marriage and home life, attend church regularly and are respected members of their community. Again we find intellectual and cultural family interests substantially above the average. The Blanks are both approximately 30 years of age at the present time."
Samuel H. Blank has continued his prior military service through the Illinois National Guard in which he holds the rank of captain, is also active in the Boy Scout movement, and over the years has been and now is personally and professionally highly regarded by his associates. At the age of 30, Blank’s professional potential is presumably substantially unrealized. On a present income in the $8,000-$10,000 per year bracket the Blank family appear to be operating within normal budgetary and indebtedness ranges.
Barbara Burns Blank presents the picture of being an intelligent, highly literate individual who made a sincere and real effort to be a good wife and mother for most of the term of her marriage to Burns, and who has succeeded in being that to Samuel H. Blank and the Blank children. In this connection generally, it should be pointed out that Burns himself apparently supplied extreme aggravations to his marriage with Mrs. Burns. And it should also be pointed out that as to both parents the past is considered with reference to present custody only insofar as it reveals or has a bearing on the children’s past lives and experiences and present interests. (See, e.g., People ex rel. Kropp v. Shepsky, 305 N. Y. 465; Matter of Laska, 3 A. D. 2d 638.)
There is nothing before the court to indicate that either Mrs. Blank or Mr. Burns are presently leading other than exemplary lives. The Blanks do have an intact family unit into which the children would enter. Ostensibly because of his present wife’s recurring illness, this is not the case with Burns. Presumably a substantial portion of the family role as to the children would be carried by their aunt, Greta Clark, and her husband.
*134 From the Fall of 1955 through 1956, Mrs. Blank by phone or by mail made sincere but futile requests and efforts to arrange visits to see Jane and John. Following another futile effort to this end by Mrs. Blank in the Summer of 1957 a New York City attorney, Lawrence Nirenstein, then was engaged to and did pursue the matter of visitation and custody with Burns without success. A reopening of the original decree as to custody was recommended by Mr. Nirenstein in March, 1958 and Mrs. Blank’s present counsel was retained. These present proceedings were initiated by an order to show cause dated J anuary 16, 1959, but did not go forward in 1959 with normal dispatch because of the birth of the Blank twins on November 4,1959 and other reasons.
While distance and other matters occasioned by the re-establishment of the Blank family in Columbus and the birth of the twins undoubtedly contributed to prevent Mrs. Blank’s efforts to see the Burns children, there are indications of at least silent resistance to any such meeting prior to the start of this proceeding. Generally in this connection, it is the court’s impression that Burns for several years has kept more and more in the background, and that the intensity of Rudolf Clark’s attitude in the matter and the Clarks’ strong desire to continue their parental roles have been and now are dynamic and determinative forces in the matter.
However, contacts between Mrs. Blank and the Clarks apparently continued and Mr. and Mrs. Blank eventually did visit Jane and John for the day on March 7, 1959 in New York City. Mrs. Blank next saw the children on the hearing day March 15, 1960 in Wampsville. Since March, 1959 extensive negotiations have been engaged in between the parties up to the present moment regarding an adjustment of this custody and visitation problem, but without avail. Since the hearing day, correspondence received by the court from the attorneys and copies of recent communications between Mrs. Blank and Mr. Clark reveal that some bitterness and acrimony have entered the continuing negotiations. It is hoped that the wisdom and maturity generally displayed by Mrs. Blank and Mr. Clark will produce an amicable adjustment of their essential differences so that the best interests and attitudes of the children will be protected.
Under all the foregoing circumstances, it cannot be said that Mrs. Blank exhibited indifference to the Burns children over the past five years, nor can it be said that her love for them and desire to have them with her is less than genuine.
*135 It is quite apparent that the present custodial circumstances have been happy and beneficial ones for the Burns children. Because such a stable and salutary pattern of life has been established during the past several years, and in view of the particularly sensitive, impressionable and formative age period which both children are now passing through, the court feels it will be to the best interests of the children to award their technical custody for the present, time to their father, Harold S. Burns, upon the condition that the children continue to reside with the Clarks. It is recognized that the more usual course is to place actual custody with a natural parent. The court nevertheless feels that it would be detrimental to the children’s best interests to remove them now from their schools, friends and other established life relationships and put them into a completely strange situation with children they have never seen, a stepfather with whom they are essentially unacquainted, and a mother with whom they regrettably have had only two casual visitations in the past five years. As Justice Breitel puts it, “ The custody of infant children is not to be shifted from parent to parent merely because the noncustodial parent has experienced an improvement in condition, status, or character. * * * Thus, generally, the custody of children is to be established, whenever possible, on a long-term basis.” (Matter of Lang v. Lang, 9 A D 2d 401, 409.)
However, the children also are now of an age where the renewal of contacts with their mother can become a most meaningful experience and opportunity should be given for its development and growth.
It is therefore decided that Mrs. Blank should be granted the right to have the children at her home on alternate Christmas and Easter vacations, and also over the Thanksgiving holiday in the years they remain in New York for Christmas. The right should also be granted to permit one calendar month’s visit by the children to the Blank home during the school Summer vacation period, the time to be fixed by Mrs. Blank upon no less than three weeks’ advance notice to the Clarks. Because of time limitations presented this year, notice of one week only will be sufficient for the 1960 Summer visit. Mrs. Blank further should be granted the right to have the children with her at least one week end a month in New York City, with the Clarks to be given one week’s notice in advance of any such visits. As indicated previously, it is hoped that a practical adjustment can be made of any present differences so that the adults concerned *136 can amicably work out the details of these visitation provisions both presently and in the future. However, the court will fix the schedules and details of visitation should it become necessary.
Because of his otherwise limited expenditures for the children’s maintenance, the necessary expenses of the children’s transportation pursuant to these visitation provisions should be borne by Mr. Burns. Submit order accordingly.