Ralph E. Cory, J.
The instant cases arose when the Department of Social Services of the City of New York, following its usual procedure, brought two support petitions against the natural parents of these two small children, since the children were on public assistance and were being cared for by an unrelated person.
The natural parents then brought custody applications, naming the present custodians of the children (unrelated persons) and the Department of Social Services of the City of New York as respondents, “ alleging said children had been wrongfully detained and their return has been refused as has custody to the petitioners who were respondents in the above-captioned support petitions and alleging further that the Department of Social Services had no legal right to continue placement with respondents since there was no hearing and no directive of any court of competent jurisdiction directing the placement or continued custody with the respondents and alleging further that the Department of Social Services has and continues to act, in a wrongful manner by refusing to return said infants to petitioners having no authority by statute or otherwise to act in such fashion detrimental to the rights of the natural parents without a hearing. ’ ’
The undisputed facts as developed from the petition, affidavits and credible evidence are as follows:
The natural parents of said two children were married on June 8,1968. The two issue of the marriage are now five years of age and two years of age. '
Upon the advice of her physician, the mother entered a nursing home in 1971. Such entry into the nursing home was caused by the constant harassment of neighbors and disinterested people because of the interracial marriage of the parties hereto (the husband is white and the wife is black). After the wife’s discharge from the nursing home where she was treated for a *776 nervous disorder, she left for Florida to recuperate in December, 1971, returning to New York in February, 1972. The wife never telephoned to inquire about her children while in Florida, which fact was not rebutted and even admitted by the wife.
The husband was in the armed forces of the United States at this time and he obtained an emergency leave at the time of his wife’s illness, returned to Staten Island, New York, where he signed a memorandum whereby he indicated that the respondents in the custody application could have temporary care of his children until he was able to make arrangements to care for them and attempt to accelerate his discharge from the armed forces. The full text of the memorandum is as follows: “I, Daniel 0., hereby agree to have Mrs. V. act as payee and care for my children temporarily until I am able to do so. I am doing this because my wife had abandoned my children. Donald A. 0. United States Army. ’ ’
The children’s mother never joined or acquiesced in the above memorandum. She joined her husband in February, 1972 to attempt to locate and obtain custody of her children and such demand was refused by the respondents. She further attempted through the Department of Social Services to ascertain the whereabouts of her two natural children and any information relating to the children’s whereabouts but was refused, as is customary by such agency.
Subsequent to the search to reobtain custody of the children, the proceedings were brought in this court for support of the infant issue, no custody having been given to the Department of Social Services by court order or otherwise, and the temporary custodians of the children have kept the whereabouts of the children unknown to the petitioners.
The petitioning wife at no time gave custody of the children mentioned to the respondents but admitted a memorandum as set forth above was executed by her husband until he could arrange for his discharge and allowed the temporary custodians to care for the children referred to herein.
The Department of Social Services did not question or rebut the fact that the memorandum had been prepared under their supervision, signed by the husband, and that subsequent thereto the children were placed with temporary custodians by the Department of Social Services and moneys were paid to the temporary custodians by the Department of Social Services for their care. The temporary custodians expended $1,000 of their own funds to move to a larger apartment at the request of the *777 Department of Social Services to more adequately and properly care for the children.
The Department of Social Services now seeks "reimbursement for funds expended by them for the support of the children.
The petitioners in the custody application then requested the court to order the return of the children to the petitioners and that all proceedings instituted by the Department of Social Services for support be discontinued.
When the case was called for hearing, the husband failed to appear on the original hearing date and the adjourned dates. Prior thereto the attorney for the parents requested that he be relieved of his assignment by the Bar Association to represent the natural parents, because of an apparent conflict of interest between the parents since the husband failed to appear in court. Such application was granted by this court. At the outset of the hearing, the petitioners were living together but they subsequently, and before the hearings, separated.
Because of the willful nonappearance of the petitioning husband, a warrant was issued for his arrest which is still outstanding. In view of the willful nonappearance of the husband, the court ordered that his name be dropped as a petitioner in the custody proceedings and a severance granted since it was obvious by his conduct and actions that he has completely abandoned his role as copetitioner in this custody petition.
Under the facts and circumstances of this case, the questions for determination are as follows:
1. Was there an abandonment of the children by the mother?
2. Did the Department of Social Services act in a proper and legal manner by allowing the unrelated persons to have temporary custody of the children?
3. Does the Department of Social Services have the authority to seek reimbursement for funds expended for the children against both natural parents, in view of the fact that no court order was ever in existence, or against one parent only. If so, which one?
4. Do the unrelated persons as temporary custodians have any rights that are superior to those of the natural mother?
It would require very strong proof to affect a natural parent’s right to custody of her small children. The proof would be far stronger where the removal of custody from the mother was not to the other parent, grandparent or close relatives but actually to the care of strangers or unrelated persons. (Matter of Laska, 3 AD 2d 638.)
*778 The best interests of the children must be determined by a court in determining questions of custody as parens patriae to do what is best for the interest of the children. The preservation of parents’ rights to have contact with their children and to protect the children against one or the other of the parents who might become a detriment to the family unit or whose conduct towards each other might be harmful to the children or harmful to the spouse is well recognized in the law of custody. (Matter of Seiferth, 285 App. Div. 221, revd. on other grounds 309 N. Y. 80; Brown v. Brown, 34 N. Y. S. 2d 459.)
The fact that a mother was temporarily hospitalized and could not care for small children as here, is not the determining factor as to whether or not now she is in a position to accord children proper care and guidance. The mother’s mental fitness and stability should be determined in the light of present conditions. (Matter of Rappaport, 80 N. Y. S. 2d 137; People ex rel. Horgan v. Horgan, 20 A D 2d 859.)
The attorney for the foster parents argues that the infant issue of the marriage have stability with their present guardians and should not be returned to the natural mother. Such stability, if it can be called that, is only of short duration, from December, 1971 to the present. This is not a situation where “ a stable and salutary pattern of life has been established ” and where accordingly change is not encouraged. (Burns v. Burns, 23 Misc 2d 130, 135.)
Generally, the custody of children is to be established, whenever possible, on a long-term basis. (Matter of Lang v. Lang, 9 A D 2d 401, affd. 7 N Y 2d 1029; Matter of Wout v. Wout, 32 A D 2d 709.)
The child’s best interests must prevail. No rule is more firmly established in our law. In all cases involving the custody of infants, the welfare of the infant is the paramount consideration. (Shakun v. Shakun, 11 A D 2d 724.)
No court can, for any but the gravest reasons, transfer a child from its natural parent to any other person. (People ex rel. Boulware v. Martens, 232 App. Div. 258, affd. 258 N. Y. 534; People ex rel. Hausler v. Stegmeier, 240 App. Div. 901, affd. 264 N. Y. 483; Domestic Relations Law, § 81.)
The right of a parent, under natural law, to establish a home and bring up children is a fundamental one and beyond the reach of any court. (Meyer v. Nebraska, 262 U. S. 390, 399; Matter of Bachman v. Mejias, 1 N Y 2d 575.)
Applying this basic statutory and case law to the facts and circumstances of the instant petition and the credible evidence *779 adduced after full fact-finding hearing, the inescapable legal conclusions are as follows:
1. There was no abandonment of the infant issue of this marriage by the natural mother. There was lacking the necessary intent to abandon. She returned from Florida in a few weeks and instituted along with her husband a search for the children and all information as to their whereabouts was refused by the Department of Social Services. The petitioner knew the temporary custodians of her children as they had baby-sat for her many times prior to her illness. The petitioner while in Florida assumed, perhaps erroneously, that the children were still with the babysitter. This fact by itself does not ripen into an abandonment per se with the necessary intent to abandon. While it may have been prudent for the petitioner to call from Florida to inquire about her children, this is not a fatal flaw in the mother’s makeup and character. She was recovering from a breakdown, trying to restore her health as soon as possible and return to her home.
2. The instability of the natural mother was not established by expert evidence. The mere fact that she suffered a breakdown and received psychiatric treatment for a nervous disorder several months before the bringing of the instant petitions is no proof that she was not now in a position to accord her children proper care and guidance. The respondents have failed to show by testimony, expert or otherwise, that the mother’s mental unfitness and unstability have been shown in the light of prsent conditions. (Matter of Rappaport, 80 N. Y. S. 2d 137, supra; People ex rel. Horgan v. Horgan, 20 A D 2d 859, supra.)
The natural mother was not a signatory to the agreement whereby her husband turned the children over, through the Department of Social Services, to the present 'custodians. In fact, her husband cannot legally declare that his wife abandoned the children. This could never be held against the natural mother. It has no legal effect whatsoever against the mother and is to be disregarded insofar as her rights are concerned. The real culprit in the entire proceedings is the natural father whose conduct and actions left much to be desired and in reality was an adverse party to his wife and her interests. Since he failed to appear for the hearings and a warrant is outstanding for his arrest, his rights, if any, cannot even be considered by this court. His willful disappearance is grim testimony to the fact that he jeopardized his wife’s legal interests in regaining her children. A fugitive from justice has no rights in a custody proceeding. He abandoned the cause of action and his conduct *780 is completely suspect. His activities did nothing hut seriously prejudice his wife’s important rights.
The Department of Social Services did not exactly cover themselves with glory during the entire proceedings, before and during the hearing. They made no serious attempt to locate the natural mother although all that information was right under their noses. Instead, they sought the easy way out and prevailed upon an errant and confused husband to sign a paper that his wife abandoned the children and he was turning the children over temporarily until he was able to care for them.
Even assuming this document had any validity, what was intended was only a temporary situation, not a permanent turning over of children to foster parents. None of these actions were suported by any court order. Accordingly, such a stipulation or agreement could never be controlling on a court considering the important problem of custody of children. (Matter of Kapzynski v. Kapzynski, 30 A D 2d 962.)
The Department of Social Services should have brought on a neglect proceeding against the mother under section 1012 of the Family Court Act. Where infants are neglected, abandoned or delinquent, a finding of neglect, abandonment or delinquency is a prerequisite to an award of custody by a court. (Matter of Hazelton, 285 App. Div. 1204.)
There was no such hearing to determine if removal of infants from their natural mother would be in the best interests of the children. Accordingly, all that followed, including the placement of the two children with temporary custodians who were paid by the Department of Social Services for the care and maintenance of the children, was in error. Custody proceedings are important and cannot be effected under a so-called color of right or because a department or agency has temporary custody of children. Courts must consider the entire evidence and in a child custody case where the future of the child is at stake, the determination of which parent should be awarded custody ought not to rest upon failure of proof or even solely upon proof adduced if proof is in any way unsatisfactory or deemed to be unreliable. (Matter of Cornell v. Hartley, 54 Misc 2d 732.)
There was no such strong proof submitted in this case that would entitle unrelated persons to custody rather than the natural mother.
In pursuance of the fundamental rule that the child’s welfare remains the primary concern, changes in the rights established should not be made without giving the other parent an oppor *781 tunity to be heard on the merits. The natural mother was denied such a fundamental right here. Instead, what was done, here was after depriving her of that right, the Department of Social Services then attempted to get court approval of its action by bringing a support petition against the mother, seeking reimbursement of funds expended on behalf of the children and trying to show in this manner that there was an abandonment of the children by the natural mother. Such actions and conduct by a recognized agency working closely within the court system is not only shocking but degrading to all concerned particularly a natural mother and her children. It would strain the credulity of even an illiterate backwoodsman to the breaking point. Such procedures should never be condoned by this or any other court.
Accordingly, the decision and order of this court, under the facts and circumstances of this case as well as the credible evidence adduced, is as follows:
1. The children Samatha and Donald 0. are to be returned by the temporary custodians to the natural mother immediately.
2. Permanent custody of these children is awarded to the natural mother.
3. No visitation rights are allowed to the natural father because of his willful failure to appear for court hearings and his own abandonment and desertion of his wife. Furthermore, the father although presently gainfully employed, has failed to support his wife for the past several months.
4. There is no basis for the support petition against the natural mother, and that petition instituted by the Department of Social Services is ordered to be terminated immediately. The natural mother is living with her mother and has not been employed for about a year. Since she never signed any agreement turning these children over to the Department of Social Services or to the temporary custodians, she would not be liable, in any event.
5. The petition for support brought by the Department of Social Services against the natural father is a proper one and should be pursued diligently, as he is gainfully employed and is responsible for all funds expended by the Department of Social Services on behalf of his children while in the temporary custody.