*271 OPINION OF THE COURT
Edmund M. Dane, J.
On October 22, 2008 this court removed the three subject children, A.Y., born in 1994; Y.Y., born in 1998; and Y.Y., born in 1999, from respondent mother, R.B., pursuant to Family Court Act § 1021. The care and custody of these children was placed with the Commissioner of the Nassau County Department of Social Services (hereinafter DSS).
On October 27, 2008, neglect petitions were filed against respondent alleging her failure to exercise a minimum degree of care over her three children by, inter alia, directing them to shoplift on a monthly basis, and not attending to their school registration and medical needs. A temporary order of supervision was granted to DSS and a temporary order of protection in favor of the children was issued on October 28, 2008. The neglect petitions have not been adjudicated.
Subsequent to their placement in foster care, the respondent informed DSS that the children have never been immunized. DSS requested that respondent consent to immunization of the children, but she refused, asserting that her religious beliefs precluded same.
DSS moved this court by order to show cause, pursuant to 18 NYCRR 441.22, Public Health Law § 2164 (2) and Social Services Law § 383-b, for an order directing an evidentiary hearing to determine whether respondent qualifies for the religious exemption to mandatory immunization pursuant to Public Health Law § 2164 (9). If respondent is found not to qualify, DSS requests the issuance of an order permitting the Department to immunize the children.
On consent, a hearing was held on December 1, 2008.
Findings of Fact
DSS foster care caseworker Matthew Barcia was the sole witness for movant. Mr. Barcia testified that the three subject children were placed in foster care prior to his involvement with this family.
The children had previously attended public schools in New York City. All three children had been accepted for attendance without immunizations based upon written information submitted by this respondent and her Messiah, which provided, inter alia, that the children could not be immunized due to the respondent’s way of life.
*272 After the children’s removal from the respondent’s care on October 22, 2008, two of the children, Y. and Y, were accepted into the Amityville School District as students without immunizations. The School District accorded both children exemptions to the requirement of immunizations based upon proofs of beliefs submitted by the respondent.
The remaining child, A., is currently not enrolled in a school program. He was placed at Hope for Youth Diagnostic Home in Amityville, New York, where he is undergoing psychological and psychiatric evaluations. School placement will be determined based upon the results of the evaluations.
The respondent testified that she is a participant in and adherent of the Congregation of El Shaddai Yisrael. The tenets are reflected in a letter from the Messiah of the Congregation to DSS (petitioner’s exhibit 3 dated Nov. 20, 2008), which provides, in relevant part, that the three children are members of the Congregation, which is a race of people, not a religion. The teachings are based on the Old and New Testaments with specific reference to Chronicles 16:11-12 and general references to laws and commandments from Genesis to Deuteronomy. The Messiah states that “[i]n keeping these laws and commands and teaching them to our children, by being obedient in all things, El Shaddai Yisrael said he will keep all diseases and sickness away from us . . . for he is the one who heals us.” Further, that “it is against his laws for these members to go to doctors or take medications or shots of any kind.” The court notes that the Messiah did not testify at this hearing.
The respondent has consistently maintained these beliefs since she was approximately 13 years of age. Respondent stated, “I was with my mother as she joined in. I grew up in the way. I started reading up on things and as I got older I understood it.” Petitioner’s exhibit 1, a letter prepared by respondent in support of the acceptance of two of her children into the Amityville School District, states she is a member of a race of people who “are not to participate in drugs called medicine.” Medicines are “made by men who call themselves scientists.” Further,
“these scientists mix up drugs that eventually breakdown the immune system as you get older and into adulthood. What people in general need to realize is that man do [sic] not heal. The Almighty, The Ruler, The Boss of man and (h)is name is: El Shaddai Yisrael! ... he is the ruler of all mankind and healer of mankind.”
*273 Respondent elaborated upon her letter (petitioner’s exhibit 1) by testifying that healing is accomplished naturally, not through the ingestion of any medications including aspirin. Surgery, cutting or giving blood is also not permitted. Respondent testified that “the thing is not to do anything on the inside of the body.” In a situation where a medication would cure a disease that would result in certain death, respondent testified that she would approach her Messiah and rely upon the natural substances recommended. It is the tenets of her Congregation that have formed the basis for respondent’s continued opposition to immunizations.
Discussion
The United States Supreme Court has recognized that religious freedom accorded our citizenry by the First Amendment to the Constitution of the United States is not an absolute right. The Court has consistently held that the right of parents to raise their children in accordance with their personal and religious beliefs must yield when the health and safety of children is threatened or when parental conduct poses some substantial threat to public safety. (Matter of Christine M., 157 Misc 2d 4, 11 [Fam Ct, Kings County 1992], citing Prince v Massachusetts, 321 US 158 [1944], reh denied 321 US 804 [1944]; Wisconsin v Yoder, 406 US 205 [1972]; Stanley v Illinois, 405 US 645 [1972]; Jehovah’s Witnesses in State of Wash. v King County Hospital Unit No. 1, 390 US 598 [1968], reh denied 391 US 961 [1968], affg 278 F Supp 488 [WD Wash 1967]; People v Pierson, 176 NY 201, 210-211 [1903].)
Governmental interference with the right of parents to raise their children is premised upon the State’s general police power to protect and promote public welfare and upon the doctrine of parens patriae. (Matter of Christine M., supra.) The United States Supreme Court has held that, in the interest of children and the general public, the enactment of statutes requiring immunization against communicable diseases is a valid exercise of a state’s police power. (Id.; see also Matter of Fosmire v Nicoleau, 75 NY2d 218, 226 [1990].) The Court has also held that it is within the power of a state to enact a compulsory vaccination law and that it is for the Legislature to determine whether vaccination for the prevention of a communicable disease is appropriate for the protection of public health. (Matter of Christine M., supra, citing Jacobson v Massachusetts, 197 US 11 [1905].)
In furtherance of public policy considerations and to promote public welfare, the New York State Legislature enacted section *274 2164 (2) of the Public Health Law to require vaccinations against certain communicable childhood diseases. These vaccinations are required to be administered to children prior to their admittance to school. (See Public Health Law § 2164 [7].)
Further, DSS is bound by 18 NYCRR 441.22 which provides in relevant part:
“(a) Each authorized agency is responsible for providing comprehensive medical and health services for every foster child in its care . . .
“(c) (1) . . . Each child admitted into foster care must be given a comprehensive medical examination within 30 days after admission . . .
“(c) (2) . . . Such an examination must include the following: . . .
“(iii) an assessment of the child’s immunization status and the provision of immunizations as necessary . . .
“(d) Prior to accepting a foster child into care in cases of voluntary placement, or within 10 days after admission into care in emergency or court-ordered placements, authorization in writing must be requested from the child’s parent or guardian for routine medical and/or psychological assessments, immunizations and medical treatment, and for emergency medical or surgical care in the event that the parent or guardian cannot be located at the time such care becomes necessary. Such authorization must become a permanent part of the child’s medical record. If written authorization cannot be obtained from the child’s parent or guardian in cases of involuntary placements, the local social services commissioner may provide written authorization where authorized in accordance with section 384-b of the Social Services Law.”
The mandatory vaccination of children prior to entering school is not, however, without exception. Public Health Law § 2164 (9) provides that: “This section shall not apply to children whose parent, parents, or guardian hold genuine and sincere religious beliefs which are contrary to the practices herein required, and no certificate shall be required as a prerequisite to such children being admitted or received into school or attending school.”
The parent has the burden of proving by a preponderance of the evidence that his or her opposition to immunization is a *275 personal and sincerely held religious belief, which belief forms the basis for the objection to vaccination. (See Mason v General Brown Cent. School Dist., 851 F2d 47, 50 [2d Cir 1988].) This is distinguished from a belief founded upon or framed as medical or purely moral considerations which is not a basis for invoking the exemption. (Matter of Sherr v Northport-East Northport Union Free School Dist., 672 F Supp 81, 94 [ED NY 1987].)
In Sherr (supra), the court recognized that defining “religion” or “religious belief’ is an inherently difficult task. It is one which brings government exceedingly close to trespassing upon First Amendment guarantees. In its search for a legal definition of religion, however, the Sherr court noted (672 F Supp at 92):
“the tremendous diversity of the manners in which human beings may perceive of the universe and their place in it may make the task [of defining religion] virtually impossible . . . The Supreme Court, for example, has held that a religion need not necessarily be founded upon a belief in the fundamental premise of a ‘God’ as commonly understood in Western theology . . . and has written that ‘the test of belief “in a relation to a Supreme Being” is whether a given belief that is sincere and meaningful occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God’ United States v. Seeger, 380 U.S. 163, 165-66 (1965). The Supreme Court and Second Circuit have each declared religion to involve the ‘ultimate concerns’ of individuals, see id., 380 U.S. at 187; International Society for Krishna Consciousness, Inc. v Barber, 650 F.2d 430, 440-41 (2d Cir. 1981), and the Second Circuit has stated that one touchstone of a religion is present where a believer will categorically disregard elementary self-interest rather than transgressing religious tenets, United States v. Allen, 760 F.2d 447, 450 (2d Cir. 1985) (citing Barber, 650 F.2d at 440, and United States v. Kauten, 133 F.2d 703, 708 (2d Cir. 1943)). See also, e.g., Africa v. Commonwealth of Pennsylvania, 662 F.2d 1025 (3d Cir. 1981), cert, denied, 456 U.S. 908, 102 S.Ct. 1756, 72 L.Ed.2d 165 (1982); Stevens v. Berger, 428 F.Supp. 896 (E.D.N.Y 1977).” (Citations omitted.)
Once a religious belief is found, an inquiry must be made into the sincerity of the belief. In arriving at its determination, the trial court must rely upon its ability to assess the demeanor of *276 the witness in order to weigh the credibility of the claim. (See Matter of Christine M., 157 Misc 2d 4, 21 [1992].)
In this regard the court noted in International Socy. for Krishna Consciousness, Inc. v Barber (650 F2d at 441):
“Sincerity analysis seeks to determine the subjective good faith of an adherent . . . The goal, of course, is to protect only those beliefs which are held as a matter of conscience . . . [I]t is frequently difficult to separate this inquiry from a forbidden one involving the verity of the underlying belief. . . [A]n adherent’s belief would not be ‘sincere’ if he acts in a manner inconsistent with the belief... or if there is evidence that the adherent materially gains by fraudulently hiding secular interests behind a veil of a religious doctrine.”
Conclusion
The issue for this court’s determination is whether respondent’s opposition to immunization of her children qualifies as a genuine and sincere religious belief entitling her to a religious exemption pursuant to Public Health Law § 2164 (9).
To qualify for an exemption respondent must first demonstrate that she holds a religious belief that is contrary to immunization. The respondent is a member of the Congregation of El Shaddai Yisrael, which refers to itself as “a race of people.” The tenets of its beliefs, as confirmed by the Congregation’s Messiah (petitioner’s exhibit 3), are based on an interpretation of biblical references which provide that the administering of man-made medicines to cure illness and disease is forbidden. The beliefs espoused by the respondent since age 13 further provide that it is the “Almighty, not man, who is the healer of mankind.” This deeply rooted view and “way of life” of the respondent constitute a religious belief.
Respondent must also demonstrate that her espoused belief is genuinely and sincerely held. The testimony of the DSS caseworker clearly established that the three children have never been immunized. Respondent testified credibly that she was willing to place the health of her children at risk by refusing to have them immunized rather than transgress the tenets of her belief. Respondent has acted consistently over a prolonged period of time in adherence to her religious convictions in refusing immunizations.
*277 Based upon the credible testimony and evidence presented at the hearing, this court finds that respondent has met her burden. Respondent has demonstrated that her opposition to vaccination is genuine and sincere, and rooted in her religious beliefs.
Accordingly, this court finds that the respondent and her three children, A.Y., Y. and Y, qualify for a religious exemption to mandatory immunizations pursuant to Public Health Law § 2164 (9).