Matter of Athena Y. (Ashleigh Z.) (2021 NY Slip Op 06908)





Matter of Athena Y. (Ashleigh Z.)


2021 NY Slip Op 06908


Decided on December 9, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 9, 2021

533767

[*1]In the Matter of Athena Y. and Others, Alleged to be Neglected Children. Rensselaer County Department of Social Services, Respondent; Ashleigh Z., Appellant.

Calendar Date:November 18, 2021

Before: Garry, P.J., Lynch, Aarons, Pritzker and Reynolds Fitzgerald, JJ.


Douglas J. Broda, Troy, for appellant.
Carl J. Kempf III, County Attorney, Troy (Kelly Cramer of counsel), for respondent.
David A. Burns, Castleton, attorney for the children.



Garry, P.J.
Appeal from an order of the Family Court of Rensselaer County (E. Walsh, J.), entered July 30, 2021, which, in a proceeding pursuant to Family Ct Act article 10, granted the application of the attorney for the children to allow the subject children to receive the COVID-19 vaccine.
Petitioner commenced this proceeding in August 2020 alleging that respondent neglected her four children (born in 2005, 2007, 2010 and 2015) due to unsanitary conditions in the home, inadequate supervision, educational neglect and medical neglect. In February 2021, petitioner effected an emergency removal of the children and placed them in foster care. In response to respondent's motion for their return, Family Court held a hearing and denied that motion (see Family Ct Act § 1028). Several months later, the attorney for the children (hereinafter AFC) informed Family Court that the two oldest children (hereinafter the subject children), then 13 and 15 years old, wished to receive the COVID-19 vaccine, but respondent did not consent. In response to the court's request for the parties' positions, the AFC, petitioner and the children's father [FN1] all submitted letters in support of allowing the subject children to be vaccinated, while respondent opposed the vaccination. After reviewing the parties' submissions, Family Court held that the subject children had the right to decide whether to receive the COVID-19 vaccine and ordered that they shall be given the vaccine if they still consent. Respondent appeals.[FN2]
Parents have a fundamental right to raise their children in the manner they choose, subject to the state's ability to intervene to protect children in narrow circumstances (see Troxel v Granville, 530 US 57, 65-66 [2000]; Santosky v Kramer, 455 US 745, 753-754 [1982]; Matter of Hofbauer, 47 NY2d 648, 655 [1979]). By statute, the right to make health care decisions for oneself belongs to anyone at least 18 years old (see Public Health Law § 2504 [1]; see also Public Health Law § 2442). Under common law, parents generally have the right to make health care decisions for their minor children (see Matter of Alfonso v Fernandez, 195 AD2d 46, 50 [1993], lv dismissed 83 NY2d 906 [1994]), though some exceptions exist, such as for emergency situations (see Public Health Law § 2504; see also Family Ct Act § 1022 [c]). Even when the state intrudes on a family by obtaining a temporary order of custody due to abuse or neglect, "parents retain the right to make certain medical decisions for their children in foster care," up until the moment that parental rights are terminated (Matter of Matthew V. [Lynette G.], 59 Misc 3d 288, 296 [Fam Ct, Kings County 2017]; see Matter of Martin F., 13 Misc 3d 659, 677 [Fam Ct, Monroe County 2006]; see also 18 NYCRR 441.22 [d]).
Generally, "[i]t is for the Congress or the Legislature, not the courts . . . to provide the exceptions to parental consent requirements" (Matter of Alfonso v Fernandez, 195 AD2d at 54; see People v Ekerold, 211 [*2]NY 386, 392 [1914]). Here, Family Court determined that the situation is "similar to reproductive health services for children in foster care," as governed by regulations permitting children ages 12 and older to make their own decisions after being informed about such relevant services (see 18 NYCRR 463.1, 463.2 [b]). Other statutory and regulatory exceptions to the general rule permit medical care of a minor — without parental knowledge or consent — for prenatal care (see Public Health Law § 2504 [3]), and for diagnosis or treatment of a sexually transmitted disease (see Public Health Law § 2305 [2]; 10 NYCRR 23.4). Minor patients also have a right to keep certain patient information confidential even from their parents, including HIV testing, certain mental health services, alcohol and substance abuse treatment, treatment as a victim of sexual assault or for a sexually transmitted disease, and the performance of an abortion (see Public Health Law § 17; 10 NYCRR 300.5 [b] [3], [4]; 18 NYCRR 441.22 [b] [7]).
Contrary to the arguments advanced by the AFC, however, the state does not have a general policy of allowing children ages 12 and older to consent to medical decisions, but has instead carved out specific situations where parental consent is not required for minors, such as in emergency situations (see Public Health Law § 2504 [4]), for immunizations to attend public schools (see Public Health Law § 2164; F.F. v State of New York, 194 AD3d 80, 82-83 [2021], appeal dismissed and lv denied 37 NY3d 1040 [2021]) and for family planning and reproductive services, regardless of whether a child is in state care (see 10 NYCRR 300.5 [b] [4]; 18 NYCRR 463.1). Notably, a bill pending before the Senate would allow minors ages 14 and older to receive vaccinations without parental consent (see 2021-2022 NY Senate Bill S3041); this indicates that parental consent is currently required for vaccination of minors — or at least that the issue is unclear. Because statutes and regulations have granted minors authorization — in contravention of the common law — to make certain types of medical decisions for themselves, courts generally should not intrude on the other two branches of government by expanding the rights of minors to make decisions in categories not included in those statutes or regulations (see e.g. Matter of Chemical Specialties Mfrs. Assn. v Jorling, 85 NY2d 382, 394 [1995]; McKinney's Cons Laws of NY, Book 1, Statutes §§ 74; 240 at 411-412 [stating that "where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded"]).
A statutory provision allows certain adults who have assumed care of a child to "give effective consent for the immunization of a child," but such person "shall not give consent under this subdivision if he or she has reason to believe that a person in parental relation to the child[*3]. . . objects to the immunization" (Public Health Law § 2504 [5]). Pursuant to regulation, each child in foster care must receive a periodic medical examination that includes, among other things, "an assessment of immunization status and provision of immunizations as necessary" (18 NYCRR 441.22 [f] [2] [iii]; see 18 NYCRR 441.22 [c] [2] [iii]); however, nothing in the regulation authorizes the local social services agency (hereinafter local agency) to provide immunizations over a parent's objection (see 18 NYCRR 441.22 [d]). Rather, the regulation requires the local agency to obtain written authorization from the parent for medical care of the child — including for immunizations — and, if such authorization cannot be obtained, permits the local agency to provide consent where authorized by Social Services Law § 383-b (see 18 NYCRR 441.22 [d]). That statute authorizes the commissioner of the local agency to "give effective consent for medical, dental, health and hospital services for any child" who has been placed in its custody under certain circumstances, including children who have been removed from their home due to a pending neglect petition (Social Services Law § 383-b).
"Although this section give[s] the [commissioner of the local agency] authority to consent to medical procedures, it would be appropriate for the [c]ommissioner, except in emergency cases, to seek the approval of the child's parents prior to performing any medical procedures[,] especially elective surgery or surgery that can be safely delayed until parental consent is obtained. Except for emergency situations, therefore, the [c]ommissioner should consent to the foster child's medical services only where the parent has refused to give consent or cannot be located" (Joseph R. Carrieri, Practice Commentaries, McKinney's Cons Laws of NY, Book 52A, Social Services Law § 383-b at 102-103; see Matter of Martin F., 13 Misc 3d at 676).
Petitioner's letter to Family Court in response to the AFC's application at issue here referred to an official guidance memorandum and flow chart from the Office of Children and Family Services addressing COVID-19 vaccine access for persons ages 12 to 17 in out-of-home placements. The memorandum states that "[t]his guidance is intended to underscore the expectation that [local agencies] make every effort to engage and assist families in an effort to facilitate informed consent and to vaccinate as many youth in care outside of their family homes as possible." Pursuant to those documents, where a child in the care of a local agency due to an abuse or neglect proceeding consents to COVID-19 vaccination but a parent affirmatively objects, the local agency should seek court approval for vaccination. Consistent with that guidance, petitioner's letter to Family Court included a request that the court grant permission for the subject children to receive the vaccine. Thus, petitioner has implemented its authority under Social Services Law § 383-b in accord [*4]with the guidance documents — i.e., even though the statute does not expressly require the commissioner of the local agency to obtain court approval before consenting to medical treatment, petitioner adhered to the better practice of seeking such approval in the face of respondent's adamant opposition.
Family Ct Act § 233 broadly declares that "[w]henever a child within the jurisdiction of the court appears to the court to be in need of medical, surgical, therapeutic, or hospital care or treatment, a suitable order may be made therefor." The statute provides Family Court with the authority to do whatever is necessary and appropriate to ensure a child's welfare, including the power to direct surgery or other care over a parent's objection (see Matter of Sampson, 65 Misc 2d 658, 664-665 [Fam Ct, Ulster County 1970], affd 37 AD2d 668 [1971], affd 29 NY2d 900 [1972]; Matter of Vasko, 238 App Div 128, 130 [1933]). This power is "not limit[ed] to drastic or mortal circumstances," and exists "even in the absence of risk to the physical health or life of the subject or to the public," i.e., the power exists even where the child's life or general health is not in immediate danger (Matter of Sampson, 29 NY2d 900, 901 [1972] [adding only "two observations . . . to the exhaustive opinion at the Family Court"]; see Matter of Sampson, 65 Misc 2d at 669-670). "There is no requirement in the statute that there be an emergency or danger to the child's life before the court may act — only a requirement that the child be within the jurisdiction of the court and appear to the court to be in need" (Matter of Sampson, 65 Misc 2d at 671; accord Matter of Thomas B., 152 Misc 2d 96, 98 [Fam Ct, Cattaraugus County 1991]; see Matter of Rotkowitz, 175 Misc 948, 950 [Dom Rel Ct of City of NY, Kings County 1941] [stating that "it was the intention of the Legislature to give power to the justices of this court to order an operation not only in an instance where the life of the child is to be saved but also in instances where the health, the limb, the person or the future of the child is at stake"]). "[T]he court has a wide discretion to order medical or surgical care and treatment for an infant even over parental objection, if in the court's judgment the health, safety or welfare of the child requires it" (Matter of Sampson, 65 Misc 2d at 671 [internal quotation marks omitted]; see Matter of Vasko, 238 App Div at 130; Mater of Christine M., 157 Misc 2d 4, 22 [Fam Ct, Kings County 1992] [addressing whether, under the circumstances, "the court should exercise its discretionary power to direct that (the child) be vaccinated against measles"], citing Family Ct Act § 233; see also Matter of Vasko, 238 App Div at 131 [Kapper, J., concurring] [noting that the predecessor statute to Family Ct Act § 233 "vest(ed) power in the courts to see to it that minor children are furnished with necessary medical attendance which is refused or neglected by the parent. With the world-wide recognition [*5]of the scientific character of the practice of medicine, we come as near to a stage of certainty in result as is humanly possible"]). In determining whether to exercise this power, a court must carefully balance the potential benefits to be attained against the risks involved in the treatment, as well as the validity of the parent's objections to the treatment (see Matter of Sampson, 65 Misc 2d at 665). However, the court must avoid "assum[ing] the role of a surrogate parent and establish[ing] as the objective criteria with which to evaluate a parent's decision its own judgment as to the exact method or degree of medical treatment which should be provided, for such standard is fraught with subjectivity" (Matter of Hofbauer, 47 NY2d at 656).
Respondent argues that she was entitled to a hearing before Family Court issued an order authorizing vaccination of the subject children. Due process generally requires notice and an opportunity to be heard before medical treatment is imposed upon a patient by court order (see Matter of Fosmire v Nicoleau, 75 NY2d 218, 224 [1990]), but said opportunity to be heard does not always require a formal procedure (see Fhagen v Miller, 29 NY2d 348, 353-354 [1972], cert denied 409 US 845 [1972]; Matter of Coates, 9 NY2d 242, 249 [1961], appeal dismissed 368 US 34 [1961]). Hearings have routinely been required in the context of overriding parents' medical decisions for their children; for example, courts have held hearings to address failure to vaccinate a child under the former religious exemption to vaccine mandates (see Matter of Baby Girl Z. [Yaroslava Z.], 140 AD3d 893, 894 [2016]; Matter of Isaac J. [Joyce J.], 75 AD3d 506, 506-507 [2010]; Matter of Nassau County Dept. of Social Servs. v R.B., 23 Misc 3d 270, 277 [Fam Ct, Nassau County 2008]; but see Matter of Freedom R. [Jamila W.], 142 AD3d 922, 922 [2016]), and to administer psychotropic medication to a child without consent (see Matter of Isaiah T.F.-C. [Charisse F.-D'Juan C.], 136 AD3d 687, 688 [2016]; Matter of Matthew V. [Lynette G.], 59 Misc 3d at 296; see also Matter of Pison B. [Raleigh B.], 163 AD3d 660, 660 [2018]; Matter of Justin R., 63 AD3d 1163, 1163-1164 [2009]). A hearing is particularly important on the latter topic. In those cases, the test is whether the proposed medication regimen is "narrowly tailored to give substantive effect to the child's liberty interest, taking into consideration all relevant circumstances, including the child's best interests, the benefits to be gained from the treatment, the adverse side effects associated with the treatment, and any less intrusive alternative treatments" (Matter of Pison B. [Raleigh B.], 163 AD3d at 660; see Matter of Isaiah T.F.-C. [Charisse F.-D'Juan C.], 136 AD3d at 688; Matter of Justin R., 63 AD3d at 1163-1164; Matter of Martin F., 13 Misc 3d at 677). Some of these factors will not be relevant to the COVID-19 vaccine, but other factors, such as the best interests of the subject children[*6], are always relevant.[FN3]
Here, Family Court gave the parties notice that it was considering the AFC's request and directed the parties to submit their positions to the court in writing, thus providing some limited opportunity to be heard. Having reviewed those submissions, the court rendered its decision. The court made specific findings that the subject children "have been fully informed regarding COVID-19 and the vaccine" and that they "have the capacity to consent." These factual findings were made without evidence and based solely on hearsay, through unsworn letters containing representations by counsel. This does not constitute a sufficient basis to support these findings.
Considering that providing a vaccine constitutes medical treatment, and given the general preference toward conducting a hearing in this type of situation, we find that a hearing was required before Family Court could grant petitioner's request over respondent's objection (see Matter of Fosmire v Nicoleau, 75 NY2d at 224-225; Matter of Isaiah T.F.-C. [Charisse F.-D'Juan C.], 136 AD3d at 688). At such a hearing, the court must focus on whether respondent's refusal to authorize vaccination constitutes "an acceptable course of medical treatment for [her] child[ren] in light of all the surrounding circumstances," while heeding the Court of Appeals' cautionary point that courts cannot "assume the role of a surrogate parent" (Matter of Hofbauer, 47 NY2d at 656). As the Office of Children and Family Services' guidance documents prohibit local agencies from administering a COVID-19 vaccine if the child refuses to consent, the hearing must address whether the subject children have been fully informed about COVID-19 and the vaccine and whether they have the capacity to consent. After the hearing, the court must carefully balance the risks and benefits of the potential vaccination to decide whether to authorize it for the subject children (see Matter of Sampson, 65 Misc 2d at 665). We therefore remit for Family Court to promptly conduct a hearing on the issue, applying this standard.
Lynch, Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, and matter remitted to the Family Court of Rensselaer County for further proceedings not inconsistent with this Court's decision, said proceedings to be conducted within 30 days of the date of this Court's decisions.



Footnotes

Footnote 1: The father is incarcerated, and it is unclear whether he has any custodial rights.

Footnote 2: This Court has received a subsequent order on consent resolving the underlying neglect petition with an adjudication of neglect against respondent, without any specific admissions, and granting petitioner a one-year period of supervision over her. Unfortunately, the form of the order — which is not directly before us on this appeal — does not clearly convey the children's physical custodial situation, creating confusion as to whether the issue on this appeal is moot. However, at oral argument, all counsel present confirmed that the children remain under petitioner's custody in foster care; thus, the matter is not moot.

Footnote 3: This case is also distinguishable from those prior medication cases — and the subject children's liberty interests will be furthered by granting the application — because the subject children are now 14 and 15 years old and are consenting to administration of the proposed vaccine.