Matter of Riley XX. (Renee XX.--Sierra YY.) (2022 NY Slip Op 02839)

Matter of Riley XX. (Renee XX.--Sierra YY.)

2022 NY Slip Op 02839

Decided on April 28, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 28, 2022

532273 532275
[*1]In the Matter of Riley XX., an Infant. Renee XX. et al., Respondents; Sierra YY., Appellant.

Calendar Date:March 25, 2022

Before:Garry, P.J., Lynch, Aarons, Colangelo and Ceresia, JJ.

Lisa A. Burgess, Indian Lake, for appellant.
Matthew J. Sgambettera, Saratoga Springs, for respondents.
Trinidad M. Martin, Glens Falls, attorney for the child.

Garry, P.J.
Appeals (1) from an order of the Family Court of Washington County (Michelini, J.), entered October 9, 2020, which, in a proceeding pursuant to Domestic Relations Law article 7, granted petitioners' motions to, among other things, prohibit respondent from having any contact with an adopted child, and (2) from an order of protection entered thereon.
In 2009, respondent executed and Family Court (Pritzker, J.) approved a judicial surrender of respondent's daughter (born in 2007), accompanied by a postadoption contact agreement. The agreement provided, among other things, that respondent was to receive updates and pictures of the child at least twice per year (see Social Services Law § 383-c [2] [b]). That agreement was incorporated into the order of adoption later that year, when petitioners adopted the child. In 2019, petitioner Renee XX. (hereinafter the adoptive mother) filed a family offense petition, alleging that respondent was attempting to contact the child. Family Court (Michelini, J.) dismissed the petition because it did not adequately allege a family offense.
Petitioners subsequently moved for a preliminary injunction prohibiting contact between respondent and the child and moved to modify the order of adoption by striking the provision requiring them to provide respondent with updates and pictures of the child. Following a hearing, Family Court found that the best interests of the child would not be served by enforcement of the postadoption contact agreement and, accordingly, eliminated the requirement that petitioners provide respondent updates or pictures of the child. The court further issued an order of protection requiring that respondent stay away from the child, her home and her school and refrain from communicating with or otherwise contacting the child until her eighteenth birthday. Respondent appeals.
At the threshold, we must address the procedural issues. Respondent first argues that Family Court lacked subject matter jurisdiction to issue the orders, as no proceeding was pending and a preliminary injunction is available only in the context of a pending action or proceeding (see CPLR 6301). Following their motion for a preliminary injunction, petitioners filed what they denominated a motion to modify the order of adoption by striking the condition for postadoption contact. Their motion papers included copies of the judicial surrender, with the postadoption contact agreement attached, and the order of adoption, which incorporated the agreement. None of those documents expressly prohibited respondent from contacting the child, but such a condition is necessarily included by implication. The judicial surrender states that Family Court informed respondent that the surrender would result in her "giving up all rights to have custody, visit with, speak with, write or learn about the child, forever," unless respondent and the local social services agency agreed upon different terms as specified therein. The surrender [*2]also states that it is subject to conditions contained in an attachment, which notes — under a heading of postadoption communication or contact — that respondent "will receive updates and pictures at least twice per year." No visitation or other contact with the child is mentioned. "[I]f parties to a contract omit terms — particularly, terms that are readily found in other, similar contracts — the inescapable conclusion is that the parties intended the omission" (Quadrant Structured Prods. Co., Ltd. v Vertin, 23 NY3d 549, 560 [2014]). Thus, by negative implication, the limited affirmative condition in the agreement indicates that no other type of contact had been agreed upon.
Based upon multiple references within its decision, Family Court apparently recognized that an appropriate method for petitioners to present their concerns about respondent's attempts to contact the child — and the most direct and logical method — would have been by a petition for enforcement of the postadoption contact agreement, pursuant to Domestic Relations Law § 112-b (4) (see Social Services Law § 383-c [2] [b]).[FN1] That statutory subdivision provides that "[a]n order incorporating an agreement regarding [postadoption] communication or contact . . . may be enforced by any party to the agreement or the attorney for the child by filing a petition in the family court in the county where the adoption was approved. Such petition shall have annexed to it a copy of the order approving the agreement regarding communication or contact. The court shall not enforce an order under this section unless it finds that the enforcement is in the child's best interests" (Domestic Relations Law § 112-b [4]).[FN2]
Although petitioners did not directly follow that procedural path, they nonetheless met the underlying requirements; they filed their motions in the proper court, attached a copy of the agreement and adoption order, and clearly stated the relief that they requested. Family Court expressly found that respondent "had notice of the relief sought, [was] well aware of the issues, and had the full opportunity to present evidence and argument[s]" at the hearing. Upon review, we agree and conclude that respondent's due process rights were protected, as she was provided notice of the issues to be considered and an opportunity to be heard (see Matter of Montgomery County Dept. of Social Servs. v Jose Y., 173 AD3d 1273, 1275 [2019], lv dismissed 34 NY3d 1010 [2019]; Matter of Isaiah M. [Nicole M.], 144 AD3d 1450, 1453 [2016], lv dismissed 28 NY3d 1129 [2017]; compare Matter of Athena Y. [Ashleigh Z.], 201 AD3d 113, 119-121 [2021]; Matter of Alexis AA. [Angela YY.—Bradley AA.], 93 AD3d 1090, 1092 [2012]).[FN3]
Thus, respondent did not demonstrate prejudice arising from the manner in which this matter was initiated. Courts are permitted to ignore a defect in the form of a proceeding, and to convert a motion into a special proceeding (see CPLR 103 [c]; 2001; Family Ct Act § 165 [a]). Accordingly[*3], we expressly deem petitioners' filings to be an application for enforcement of the postadoption contact agreement (see Posporelis v Posporelis, 41 AD3d 986, 988 [2007]; see also CPLR 3026; compare Matter of Saratoga County Support Collection Unit v Caudill, 160 AD3d 1071, 1073 [2018]).
Upon reaching the merits, the question is whether enforcement of the agreement is in the child's best interests (see Domestic Relations Law § 112-b [4]; Matter of Bilinda S. v Carl P., 193 AD3d 1355, 1356 [2021], lv denied 37 NY3d 904 [2021]; Matter of Andie B. [Lee J.—Hope C.], 102 AD3d 128, 129 [2012]). The adoptive mother testified that respondent posted pictures of the child on Facebook and labeled them as pictures of respondent's daughter, even after the adoptive mother objected. When the adoptive mother stopped sending pictures, respondent located pictures of the child online and reposted them without consent. Respondent also called the adoptive family's home phone, sent text messages to the adoptive mother, showed up at the child's school to see her and attempted, both directly and through friends and relatives, to contact the child through social media. Family Court credited the adoptive mother's testimony, noting that respondent did not dispute any of these facts but instead argued that her conduct did not violate the agreement. Under the circumstances, we find a sound and substantial basis in the record for Family Court's conclusions that the child's best interests would be served by prohibiting respondent from contacting the child and that an order of protection was necessary to do so (see Matter of Yasmine T. [Aeisha G.—Keisha G.], 161 AD3d 1179, 1180 [2018], lv denied 32 NY3d 903 [2018]; Matter of Kristian J.P. v Jeannette I.C., 87 AD3d 1337, 1337-1338 [2011]). Further, as respondent was attempting to inappropriately initiate contact with the child and repeatedly posting her pictures in public spaces despite the stated objections of petitioners, the court did not abuse its discretion in refusing to enforce the condition of the postadoption contact agreement requiring petitioners to provide respondent with pictures and updates.
Lynch, Aarons, Colangelo and Ceresia, JJ., concur.
ORDERED that the orders are affirmed, without costs.

Footnotes

Footnote 1: Although Family Court also mentioned Domestic Relations Law § 114, we note that petitioners did not need to open or vacate the order of adoption to obtain the requested relief.

Footnote 2: We note that the attorney for the child upon appeal correctly cited and applied this provision in advocating for the determination to be affirmed.

Footnote 3:Indeed, at the hearing, respondent's counsel acknowledged that respondent had notice of what petitioners were seeking.